# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Paula S. Conkle, | : | Case No. 5:08CV1937 |
| | : | |
| Plaintiff | : | Judge Dan A. Polster |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Commissioner of Social Security, | : | |
| | : | **REPORT AND RECOMMENDED** |
| Defendant | : | **DECISION** |

Underlying this action brought pursuant to 42 U.S.C. §405(g) and 1383(c)(3) are applications for disability insurance benefits (DIB), 42 U.S.C. §416(i), 423, filed on May 16, 2001 and an application for supplemental security income (SSI), 42 U.S.C. §1381 et seq., the filing date of which is unclear.[1]  The DIB claim alleged an onset date of disability of March 22, 1999.

Plaintiff's right to benefits under both programs is dependent upon a showing that she is disabled, as that term is defined in the Social Security Act.  Disability is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for not less than 12 months."  42 U.S.C. §§423(d)(1), 1383c(a).  The programs differ with regard to other qualifying criteria.  The disability benefits statute requires "fully insured" status, which

---

[1]Defendant's brief erroneously identified both applications as having been filed on May 16, 2001.  While the record contains an SSI application dated June 27, 2005 at an evidentiary hearing held January 7, 2005 the Administrative Law Judge stated that it encompassed an SSI claim made in December 2004 that had been moved up to the hearing level to be determined along with the DIB claim.  Obviously, an SSI claim filed in June 2005 could not be heard six months earlier.

focuses on the period of time the claimant has worked while covered by Social Security.  The SSI program focuses on income and resources as basic eligibility factors.

These application, however, were not the first filed by the plaintiff.  The plaintiff had applied for DIB and SSI in September 1997.  Those claims were heard upon <u>de novo</u> review by Administrative Law Judge (ALJ) Nelson Karl in 1999, and on March 26, 1999 he entered a decision finding the plaintiff not disabled.  After denial of review by the Appeals Council an appeal was filed in this court, <u>Conkle v. Commissioner of Social Security</u>, Case No. 5:00CV2950, but it was dismissed with prejudice by Magistrate Judge Baughman on May 18, 2001 pursuant to a joint stipulation of the parties.

This being so, ALJ Karl's decision stands as <u>res judicata</u> for the proposition that the plaintiff was not disabled as of March 26, 1999.  The plaintiff's fully insured status only extended through December 31, 2001.  Therefore, to be entitled to an award of DIB under her 2001 application the plaintiff would be required to prove a deterioration in her physical and/or mental status from March 26, 1999 to December 31, 2001 to the point where she could be deemed disabled.

She would, however, be entitled to an award of SSI if the evidence established that she was disabled as of or after the date of her SSI application, SSI awards only being granted from the date of application forward.[2]  The record is confusing in this regard.  It contains a copy of an SSI application signed by the plaintiff dated June 27, 2005.  However, at the evidentiary hearing held on January 7, 2005 by the ALJ whose decision represents the defendant's final determination under review herein he stated that that hearing encompassed an SSI claim made in December 2004 that

---

[2]In their briefing neither counsel recognized this distinction, and the significance of the medical evidence in this record insofar as it pre-dates and post-dates January 1, 2002.  By the same token, the ALJ whose decision represents the defendant's final determination under review herein did not delineate between the periods pertinent to the DIB and SSI claims and the medical evidence probative of the plaintiff's condition during those periods.

had been moved up to the hearing level to be determined along with the 1991 DIB claim. Obviously, an SSI claim filed in June 2005 could not be heard upon de novo review six months earlier, so that it must have been filed at some time in December 2004 as stated by the ALJ.

Much of the evidence in the first 330 pages of the 1012 page transcript relates to the plaintiff's 1997 applications and the decision thereon by Judge Karl, and is relevant to this action only insofar as it bears upon a possible change in the plaintiff's condition over the next twenty-one months.  In addition, the majority of the medical evidence in the record post-dating January 1, 2002 pertains to matters either totally unrelated to the conditions which are the basis of the plaintiff's alleged disability or are, at best, of tangential relevance.

Turning to the procedural history of the claims before this Court, upon denial of the plaintiff's 2001 DIB claim at the state agency level she requested de novo review by an ALJ and an evidentiary hearing was convened on January 7, 2005.[3]  Testifying at that hearing were the plaintiff and a vocational expert, Mr. Thomas Nimberger.

On January 27, 2005 the ALJ entered his decision finding the plaintiff not disabled.  That ruling, however, was set aside by the Appeals Council on October 22, 2005, and the matter remanded to the ALJ for further proceedings.  The Order of Remand reads:

> The Administrative Law Judge issued a decision on January 27, 2005.  The claimant has asked the Appeals Council to review this decision.
>
> The Appeals Council grants the request for review under the substantial evidence, error of law, and new and material evidence provisions of the Social Security Administration regulations (20 CFR 404.970 and 416.1470).  Under the authority of 20 CFR 404.977 and 416.1477, the Appeals Council vacates the hearing decision and

---

[3]As previously noted, that hearing covered both the DIB and SSI claims.

remands this case for further proceedings.

The hearing decision found that the claimant has no exertional limitations, and is limited to simple, routine, low-stress, non-public tasks with limited and superficial interaction with supervisors and co-workers and with no requirement for arbitration, negotiation or confrontation.  It was further found that the claimant could do the jobs listed by the vocational expert, and that she was not disabled within the framework Rule 204.00, Appendix 2, Subpart P, Regulations No. 4.

The record shows that the claimant has been diagnosed with a personality disorder, post traumatic stress disorder, somatization disorder, and a major depressive disorder (Exhibits 8F, 11F, 12F, 15F, 18F, B6F, B13F, B17F, and B18F). A consultative examination in February 2001 indicated that the claimant's capacity to cope with daily stressors appeared to remain severely impaired, and she continues to behave in an impulsive behavior (Exhibit B6F).  An examination in September 2001 indicated a significant and severe mental disorder and severe personality deterioration (Exhibit B13F). The decision does not provide an adequate evaluation of the claimant's mental impairments, the opinions expressed nor does it provide adequate rationale for not accepting the opinions expressed (20 CFR 404.1529 and 416.929).

The decision does not provide an adequate and clear discussion of the claimant's residual functional capacity as outlined in Social Security Ruling 96-8p.

Upon remand the Administrative Law Judge will for the period prior to December 31, 2001, the last day insured for disability insurance benefits purposes and through the date of decision for Supplementary Security Insurance purposes:

> Give further consideration to the examining source opinion pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the examining source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1512 and 416.912).

4

Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence will include any available medical evidence form the claimant's treating sources and a consultative psychiatric examination and medical source statements about what the claimant can still do despite the impairments.

Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p).

Further evaluate the claimant's mental impairments in accordance with the special technique describe in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

Give further consideration to the claimants maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14).  The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole.  The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966).  Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflict between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-

4p).

> The claimant filed a subsequent claim for Title II and Title XVI benefits on June 29, 2005.[4]  The Appeals Council's action with respect to the current claims renders the subsequent claim duplicate. Therefore, the Administrative Law Judge will associate the claim files and issue a new decision on the associated claims.

> In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

Following the entry of that order the plaintiff was referred for a consultative examination, performed by Dr. Morton Saunders on October 18, 2005.  It does not appear that Dr. Saunders is a psychiatrist, and his four page report is almost entirely devoted to the plaintiff's physical condition. The only references therein to the plaintiff's mental/emotional condition were "Psych: There is no agitation, anxiety or depression demonstrated during the exam" and "The claimant would be able to carry, manipulate, hear, understand and follow direction of commands.  There was a slight slurring of a speech, however memory, focus and concentration appeared to be intact."  This Court considers the argument made in defendant's brief that those passing comments satisfy the Appeals Council's directive to obtain a "consultative psychiatric examination" to border on the specious.

The second evidentiary hearing was convened on March 24, 2006.  Along with the plaintiff and Mr. Nimberger, Dr. Melvin Ross,[5] a board certified psychiatrist, testified.

At the outset of the hearing the ALJ mentioned the order of remand, and shortly thereafter

---

[4]The record does not contain an application for Title II benefits (DIB) dated June 29, 2005.  It does contain the June 29, 2005 application for Title XVI benefits (SSI), which must have been the third such application filed by the plaintiff.

[5]Coincidentally, Dr. Ross had appeared as the medical expert at the hearing before ALJ Karl seven years earlier, and remembered the plaintiff.

6

asked plaintiff's counsel "[I]s the file up to date now or are there medical or other records outstanding," which presented counsel, who in fact then referenced "a physical consult exam done in October of '05," the opportunity to complain that there had not been a consultative psychiatric examination as directed by the Appeals Council.  He did not do so then, or at any time during the hearing before the ALJ.

At that hearing the plaintiff testified that she has been diagnosed as diabetic since 1982, and that she suffers from diabetic neuropathy in her feet and hands.  When asked by her counsel "what kind of neuropathy are you having and have you been happening."  The plaintiff testified:

> A.    I have problems like with my feet, you know, they feel fat and I can't feel a lot of pain.  You know, there's a constant numbness.  I get the same in my hands, sometimes in the right shoulder, the right hip, the right knee, and you know, I also have a lot of back pain.
>
> Q.    The numbness in your hands and feet, is that something you have all the time or does it come and go?
>
> A.    Usually I have it all the time.  There are on occasions, you know, when it's fairly warm out and you know, I've used aspirin for three or four days where I do get some of the feeling back.
>
> Q.    How does the numbness in your feet affect your walking and standing?  What—tell us about that.
>
> A.    The numbness in the feet, you know, it's like it makes it hard to maintain your balance because if you step down on an uneven surface, you know, it's like I tend to fall because, you know, I can't really feel.  You know, it's like if there's something there, you now, the foot doesn't rest, so I can't set my weight and you know, it —
>
> Q.    How about in your hands, how does it affect you

7

using your hands?

A.      It makes it very hard to like open jars.  I have a really hard problem, you know, opening like water bottles, pickle jars.  You know, I have a hard time being able to grip things.  I have a tendency, you know, that I constantly—like if I'm drinking, I have to keep a hard surface underneath it because it'll slip out of my hand.

Q.      Do you drop things like the drinking glass and other things?

A.      Yes.

Q.      You talked a little bit about the pain that you mentioned hip, and knee, and your back.  And any place else where you have pain?

A.      The right shoulder, the back and neck.

The inquiry then turned to the plaintiff's mental/emotional status, and she stated that she had been seeing psychiatrists and therapists for about ten years.  It appears from her testimony that the plaintiff's problem is basically anger management, as she related a history of conflicts with relatives, her children, school authorities, fellow employees and employers, the last of those resulting in her being fired or quitting her job.

Dr. Ross' testimony was restricted to the question of "what impairments you find in her record that result from psychological abnormalities and that are demonstrated by medically acceptable techniques."  After reviewing what he believed to be the pertinent evidence from the plaintiff's treating mental health professionals Dr. Ross opined that the plaintiff "would not be able to engage in any occupation which had a temperament listing required for the functions of confrontation, arbitration or negotiation [and] that she would function best at occupations that have minimal exposure to the public, co-workers or supervisors, but I don't mean to exclude any group

8

of people like that. . . . I think that if she has simple structured relationships to any member of those three groups of people, that she would be able to function."

In his examination of Mr. Nimberger the ALJ posited an individual of the plaintiff's personal/vocational profile who was not exertionally limited but who had the psychological limitations Dr. Ross described.  The vocational expert identified a number of jobs that such an individual could perform.  When questioned by plaintiff's counsel, who added to the ALJ's hypothetical varying exertional limitations, Mr. Nimberger continued to opine that such a person could engage in substantial gainful employment until the questions assumed that the individual would be extremely limited in manual dexterity and/or was visually impaired, as to which he stated that such an individual would not be employable.

On April 27, 2006 the ALJ entered his decision finding the plaintiff not disabled.  His "Findings of Fact and Conclusions of Law" were:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2001.

2.   The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3.   The claimant suffers from a personality disorder (Exhibit B6F, B13F, B17F, B33F, and B35F), which is a severe impairment (20 CFR 404.1520(c0 and 416.920(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or that is medically equivalent to the requirements of an impairment listed in the Listing of Impairments (20 CFR Part 404, Subpart P, Appendix 1) (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.   The claimant retains the following residual functional capacity: She has no exertional limitations (20 C.F.R. §§404.1567,

416.967).  She is limited to simple, routine, low-stress, non-public tasks that involve only limited, superficial, and routine interaction with supervisors and public.  She is precluded from tasks that involve arbitration, negotiation, confrontation, or supervision of the work of others.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  The claimant was born on February 4, 1962 and has been a younger individual age 18-44 (20 CFR 404.1563 and 416.963) at all relevant times.

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability due to the claimant's age (20 CFR 404.1568 and 416.968).

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.  The claimant has not been under a "disability," as defined in the Social Security Act, from March 29, 1999 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

In seeking review of that decision by the Appeals Council plaintiff's counsel raised fro the first time, along with other claims of error,[6] the fact that the ALJ had not referred the plaintiff for a consultative psychological evaluation.  On June 13, 2008 the Appeals Council denied the request for review, thereby constituting the ALJ's decision as the defendant's final determination.

On this appeal the plaintiff advances the following arguments:

1.  The decision is not supported by substantial evidence and the

---

[6]In addition to those claims counsel submitted a blood study performed in May 2007, which he argued supported the plaintiff's claim of uncontrolled diabetes.

10

plaintiff was denied a fair hearing where the ALJ failed to follow the Appeals Council remanded by failing to obtain a consultative psychiatric examination as specified in the remand order and failing to articulate adequate reasons for rejecting the evidence of the examining source, Doctor Saunders, and the treating source evidence.

2.  The ALJ and the Commissioner erred in denying the claim based on the VE's answer to a hypothetical question that did not contain all of Ms. Conkle's impairments.

Before addressing these broad claims of error by the ALJ this Court will undertake the analysis that the ALJ and counsel should have made as to whether there is medical evidence in this record reflecting a worsening in the plaintiff's condition between March 26, 1999 and December 31, 2001.  Not only did this Court fail to find such evidence,[7] the record contains a response date March 14, 2002 from Dr. David Sassano, a treating physician, to a questionnaire from a state agency regarding the plaintiff in which the doctor indicated that as to physical activities the plaintiff had no limitations, and under the heading of "mental activities" he noted "some loss of understanding and memory," but did not note any limitations for sustained concentration and persistence or for social interaction and adaptation.

The plaintiff underwent a psychological evaluation by Dr. Gary J. Sipps in November 2001.  Dr. Sipps assigned the plaintiff a GAF rating of 52, connoting "moderate symptoms," which is commensurate with the assessment of the plaintiff's mental status made by ALJ Karl in his decision entered over two years earlier.

In addition, there is a report of a consultative examination performed by Dr. Milan Herceg in November 2001, in which the doctor only found that the plaintiff suffered from "mechanical low

---

[7]The medical evidence generated during that period is mostly found at pages 459 through 537 of the record.

back pain," without any significant physical findings.  He did note that the plaintiff had reported "a significant mental health history" and that "Due to her recent changes in medications with three new psycho-tropic medications I do think it prudent to review her psychiatric evaluations."

Given the paucity of medical evidence generated during the March 1999 through December 2001 period and the reports from Drs. Sassano, Herceg and Sipps, this Court has no hesitancy in concluding that plaintiff failed to establish entitlement to an award of DIB.

This leaves for consideration the question of whether the ALJ erred in finding that the plaintiff was not entitled to SSI.

The standards which control on a review of this nature were summarized by the Sixth Circuit in Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984) as follows:

> Judicial review of the Secretary's decision is limited in scope to determining whether the findings of fact made by the Secretary are supported by substantial evidence and deciding whether the Secretary employed the proper legal criteria in reaching her conclusion, Walston v. Gardner, 381 F.2d 580, 585 (6th Cir. 1967).  This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility, Myers v. Richardson, 471 F.2d 1265 (6th Cir. 1972).  Rather "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive..."  42 U.S.C.  §405(g).
>
> The Supreme Court has stated that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantiality of the evidence must be based upon the record taken as a whole.  Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980), citing Futernick v. Richardson, 484 F.2d 647 (6th Cir. 1973).  "Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the `substantiality of evidence must take into account whatever in the record fairly detracts from its weight'." Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978), quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474 (1951).  "We may not focus and base our decision entirely on a single piece of evidence, and disregard other pertinent

evidence." Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).

In resolving the issue of whether the defendant's final determination is supported by substantial evidence the decision upon judicial review cannot turn upon whether the reviewing court agrees with the Secretary's determination. Indeed, the reviewing court may conclude that substantial evidence would support a final determination contrary to that arrived at by the defendant and yet be obliged to affirm the defendant's final determination. In Mullen v. Bowen, 800 F.2d 535, at 545 (6th Cir. 1986), the court cited with approval the following from Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984):

> The substantial-evidence standard allows considerable latitude to administrative decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposition decision.

The first specific argument advanced on behalf of the plaintiff is that the ALJ did not comply with the directive of the Appeals Council that the plaintiff was to be referred for a consultative psychiatric examination.

As previously stated, this Court rejects defendant's contention that the examination performed by Dr. Saunders constituted a consultative psychiatric examination, and this Court is troubled by the fact that no such examination was ordered following the remand by the Appeals Council.

This Court is equally troubled by the fact that plaintiff's counsel made no mention of this consideration at the March 24, 2006 evidentiary hearing.

The Appeals Council, however, was obviously not troubled by this omission. In his brief to the Appeals Council seeking review of the ALJ's decision plaintiff's counsel made the same

13

argument advanced herein, and the Appeals Council did not find that its order of remand had not been satisfied.

Considering that Dr. Ross is a psychiatrist and based his opinion as to the plaintiff's mental status on all the evidence in the record he considered pertinent thereto, this Court cannot find that the failure to refer the plaintiff for a consultative psychiatric examination fatally undermines the defendant's final determination.

This Court notes that evidence originating with the plaintiff's therapist at the Portage Path Behavioral Health Center does not support the position that she suffers form a mental impairment of disabling severity.  In July 2005 Judy Uhlar, an LISW at that agency, completed a questionnaire regarding the plaintiff in which she stated that the plaintiff had "poor stress tolerance, short fuse [with] others."  A similar form was completed that month by a psychiatric nurse, who also stated that the plaintiff "cannot handle stress [without] increase in temper outbursts."  In December 2004 a letter was sent to plaintiff's counsel signed by both the therapist and a psychiatrist who had been treating the plaintiff at Portage Path since January 2000, which ended with the statement "The focus of treatment is anger management, problem solving and coping skills to handle past abuse.  She is doing well with treatment" (emphasis added).  Another letter to plaintiff's counsel dated March 8, 2006 signed by the therapist and an Advanced Practice Nurse stated "Paula has been a client since 5/96.  Her diagnoses in 2005/2006 has remained the same," those being post traumatic stress disorder and dysthemic disorder.

Dr. Ross testified that he took the foregoing into account in reaching his conclusion that the plaintiff could work in a low stress setting with minimal exposure to the public co-workers or supervisors.

The next issue raised by plaintiff is that in his 2005 decision the ALJ found that the plaintiff "suffers from a somatoform disorder with hypochondriacal features, a major depressive disorder, post traumatic stress disorder, and a personality disorder," whereas in his 2006 decision he only found that plaintiff suffers from a "personality disorder."  Counsel asks the theoretical question whether those other disorders somehow went away.  The answer to this question is that in 2005 the ALJ was accepting at face value diagnoses appearing in the record, whereas in 2006 he credited the testimony of Dr. Ross who opined that the more accurate diagnosis of the plaintiff's mental state was simply personality disorder, and that he did not see a justification for a separate diagnosis of major depression.[8]

The argument advanced concerning the fact that the ALJ did not find the plaintiff's diabetes to be a "severe impairment" proceeds from a false premise.  In his brief plaintiff's counsel states "The decision misstates the evidence regarding the finding that Ms. Conkle's diabetes is not a severe impairment.  The statement in the decision that 'The record does not show that Ms. Conkle has been treated for diabetes' (Tr. 337) is an example."  In fact, the ALJ's decision, as found at page 337 of the transcript, reads "The record does show that Ms. Conkle has been treated for diabetes."  That is followed by the ALJ's rationale for concluding that the plaintiff's diabetes does not constitute a "severe impairment," as that term applies in the Social Security disability context.

This Court has carefully and fully reviewed the medical records pertaining to the plaintiff's diabetes and does not find anything in those records reflecting complaints to the plaintiff's physicians commensurate with her testimony at the evidentiary hearings, nor any findings by those physicians that her diabetes was producing neuropathies.

---

[8]Of course, the fact remains that in 2005 the ALJ did not find the several mental impairments he accepted to be of disabling severity.

15

This being so, this Court cannot find that the ALJ's determination that the plaintiff's diabetes is not a severe impairment was beyond his "zone of choice" discretion.[9]

With regard to the report from Dr. Saunders, which the ALJ discounted, that report would support the conclusion that the plaintiff is at least capable of sedentary work.  There is no other medical evidence in this record indicating that the plaintiff is physically incapable of work at the sedentary level.

In his testimony Mr. Nimberger stated that a number of the jobs he identified were performed at the sedentary level.  This being so, even if the ALJ erred in finding that the plaintiff has no exertional limitations and should have credited Dr. Saunders' report the ultimate conclusion that the plaintiff is not disabled would stand.

While this Court must, in all candor, state the ALJ's decision under review herein is not the most cogent and/or artfully written that this Court has had occasion to review, this Court is satisfied that the ALJ's ultimate conclusion that the plaintiff is not disabled and, therefore, not entitled to SSI is consistent with the substantial evidence standard and was within his discretion as trier of the facts. It is, therefore, recommended that final judgment be entered in the defendant's favor.


                                        s/DAVID S. PERELMAN
                                        United States Magistrate Judge


DATE:    September 9, 2009

_____

[9]If the ALJ erred in failing to find that the plaintiff's diabetes was a severe impairment, in this Court's opinion that would be harmless error as there is nothing in the medical evidence reflecting that the disorder was of such severity as to render the plaintiff unable to work at any exertional level.

16

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).